In re K.C. AEROSPACE, INC., Debtor.

In re FORTUNE AIR, INC., Debtor.

Bankruptcy Nos. 92–43983–2, 92–43984–2.

United States Bankruptcy Court,
W.D. Missouri.

July 12, 1994.

---

Steven C. Block, Kansas City, MO, for K.C. Aerospace, Inc.

Robert A. Pummill, Kansas City, MO, Trustee for Fortune Air, Inc.

Lynne Seiffert, Hilb, Rogal and Hamilton Co. of Atlanta, Atlanta, GA.

## ORDER

FRANK W. KOGER, Chief Judge.

Debtor filed a voluntary petition on December 15, 1992, and subsequently filed a motion to convert the case from Chapter 11 to Chapter 7 within the next ten days. The motion was granted and a panel trustee was appointed as the Trustee on December 28, 1992. The affairs of K.C. Aerospace, Inc. were inextricably linked to the affairs of Fortune Air, Inc., another corporation which filed bankruptcy at the same time. However, it was not converted to Chapter 7 until January 7, 1993, and a panel trustee was appointed as the Trustee in that case.

The reason that it appears the affairs of the two corporations with inextricably linked was that both corporations were owned by the same principals, both corporations were engaged in supplying parts and pieces to the airline industries, and both corporations apparently had intermingled their inventories while occupying the same premises.

The respective trustees determined that they should have an auction and that the inventory of the two corporations should be sold by the same auctioneer at the same place and at the same time. They suggested a specific auctioneer. Because of previous problems with that auctioneer, this Court was very reluctant to approve the employment of this suggested auctioneer to conduct the auction in these two cases. Over a year previously this Court found itself in the unenviable position of having to request the United States Attorney to take action against the recommended auctioneer for failure to remit monies the auctioneer had received from the auction in another bankruptcy. The trustee in that previous case had requested the assistance of the Court and through the good offices of the United States Attorney, the money was finally paid. No indictment was filed.

Therefore, when it was suggested to the Court that that same auctioneer be appointed in these two cases, the Court, as stated, was most reluctant. However, the Court was assured by the two trustees that this auctioneer was on the approved list of the United States Trustee and was further assured

there would be no problem because the United States Trustee had made this auctioneer produce and post a bond covering his faithful performance of duties. Disregarding the age-old precepts which the Court's grandmother had confided in the Court many, many years ago, to-wit: "The leopard does not change his spots", this Court did go ahead and approve the employment of the auctioneer to conduct the auctions in these two cases.

Unfortunately, subsequent events proved that the Court's dear old grandmother's wisdom was far better than that of the United States Trustee. Once again, the auctioneer failed and refused to remit proceeds from the auction to the trustees. Once again, the trustees approached the Court to see if the Court would get the United States Attorney to take some action. It was at this point that the Court suggested that the United States Trustee proceed against the bond that the Court had been told that the United States Trustee had required and which made this auctioneer a loyal, reverent, honest, and true person to whom the funds of the United States Bankruptcy Court could be entrusted. The Court was told that the United States Trustee did not want to make a claim on the bond unless the United States Trustee had to, and that it would be much better if the Court would take action to force some kind of payment from the auctioneer.

In the spirit of harmony, this Court went back, hat in hand, to the United States Attorney and requested assistance. The United States Attorney, once again, was very helpful and eventually the money that the auctioneer had received at the auction sale, months before, was finally paid to the panel trustees due to the efforts of the United States Attorney. Needless to say, the Court was not pleased with the performance of the United States Trustee and mentioned same to the panel trustees, although the Court took no official action against the United States Trustee for what the Court frankly considers to be nonfeasance (if not worse) in the performance of the duties of the United States Trustee.

All this preceded the last chapter in this saga. That occurred when both of the panel trustees applied for permission to pay $700.00 each to the bonding company which had allegedly bonded the auctioneer for the benefit of the United States Trustee. What apparently happened is that the United States Trustee requested the bond, the auctioneer applied for the bond, the auctioneer did not pay for the bond even though the insurance company posted it, and now the insurance company is billing the United States Trustee as beneficiary of the bond for the bond premium of $1,400.00.

The Court conducted a hearing at which it was expressly indicated that the foregoing was the case. There is only one discrepancy in the facts. The Court was told originally that the United States Trustee did not wish to make demand under the bond. At the hearing the staff attorney for the United States Trustee represented that demand had been made on the bond, but nothing was paid on the bond because the money had came from the auctioneer through the good offices of the United States Attorney before the bonding company made any payment.

This Court will not approve the expenditure of $700.00 from each estate to pay the bond premium on a bond which, as far as the Court knows, was never used. The United States Trustee seemingly required this bond so that his office could continue to use an auctioneer who was known to have defaulted in his obligation to remit funds received by him. The Court believes that the conduct of the United States Trustee in this case has been extremely reprehensible. First, the trustee gets rescued where there is a shortage of funds in an old case. Then the trustee deliberately goes out and allows the same party who caused the first shortage to be entrusted with additional funds in two more cases. Then the United States Trustee has the gall to seek to impose a cost on two estates to pay for the bond that the United States Trustee required but didn't use in these cases. If the United States Trustee has to pay for the bond that it should not have required from a person that it should not have employed, then that is the United States Trustee's expense, not the expense of these estates. This Court will not surcharge the bankruptcy estate and penalize the credi-

tors for the non-feasance (or worse) of the United States Trustee. The Court can only hope that there are not additional cases in the Western District of Missouri where the United States Trustee has entrusted the property of bankruptcy estates into the hands of this auctioneer.

The request of the panel trustee to approve the payment of $700.00 to the auctioneer is DENIED.

SO ORDERED.